IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:
ELANTIC TELECOM, Inc.,

Reorganized Debtor.

NORTHERN VIRGINIA REGIONAL PARK AUTHORITY,

Plaintiff,

v.

VIRGINIA ELECTRIC AND POWER COMPANY d/b/a DOMINION VIRGINIA POWER,

and

ELANTIC TELECOM, INC.,

and

ELANTIC NETWORKS, INC.,

Defendants.

1:06cv1049

Case No: 04-36897-DOT
CHAPTER 11

**<u>Memorandum Opinion</u>**

Before the Court are Plaintiff Northern Virginia Regional Park Authority's Motion to Remand and Defendant Elantic Telecom, Inc.'s Motion to Transfer. Because the Court does not have subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1334, the Motion to Remand will be granted. In light of this decision, the Motion to Transfer will be denied as moot.

**Background and Procedural History**

The Northern Virginia Regional Park Authority ("Park Authority") is made up of the counties of Fairfax, Loudoun, and

Arlington and the cities of Fairfax, Falls Church, and Alexandria. Pursuant to a series of deeds between 1978 and 1995, the Park Authority acquired from Virginia Electric and Power Company, a Virginia corporation now doing business as Virginia Dominion Power ("Virginia Power"), a strip of land 100 feet wide and 45 miles long that runs from Arlington County through Fairfax County to Purcellville in Loudoun County (the "W&OD Trail" or "the Trail"). The Park Authority converted the W&OD Trail into a regional public park and derives income by leasing telecommunications lines on the Trail to third parties.

Under the deeds, Virginia Power reserved for itself and its successors its preexisting electrical facilities as well as certain easement rights over the Trail, but the Park Authority received the right to control use of the Trail, including the use of telecommunications lines by any third parties. The deeds provided that Virginia Power gave up the power to convey, apportion, or sell its rights and privileges under the easement to third parties.

In February 1998, Virginia Power notified the Park Authority that it intended to replace a static wire running at the top of its electrical towers along the Trail and to improve the wire by adding a fiber optic cable telecommunications line. The Park Authority did not object to Virginia Power's use of its easement for internal telecommunications purposes, however, it has

consistently objected to any use of excess telecommunications capacity by third parties without its consent.

Dominion Telecom, a sister corporation of Virginia Power, began using the fiber optic telecommunications line on the Trail sometime between 1998 and 2000, with the permission of Virginia Power but without the permission of the Park Authority. The Park Authority contends that Dominion Telecom paid Virginia Power below market rates for this use, but has not paid the Park Authority any fees for the use of the line.

In 2003, the Park Authority filed a complaint against Virginia Power in the Circuit Court of Fairfax County, seeking, among other relief, a declaration of the rights of the parties under the original deeds and a determination of whether, under Virginia Power's easement, it could convey to Dominion Telecom or any other third party the right to use the fiber optic telecommunications line on the Trail.

On June 30, 2004, the Circuit Court entered a Decree in which it ruled that Virginia Power's easement under the deeds is a non-exclusive easement in gross, which does not empower Virginia Power to convey to Dominion Telecom or any other third party the right to use the telecommunications line on the Trail. Virginia Power appealed the decision to the Supreme Court of Virginia, which affirmed the Decree on September 16, 2005, and denied rehearing. See Virginia Elec. and Power Co. v. Northern

Virginia Regional Park Authority, 270 Va. 309, 618 S.E.2d 323 (2005).[1] The Park Authority alleges that despite the affirmance of the Decree, Virginia Power and its grantee, Dominion Telecom (and its successors), have continued to use the Trail in violation of the Park Authority's rights.

In March 2004, while the appeal of the Decree was in progress, Dominion Telecom merged with several companies to become Elantic Telecom, Inc. ("Elantic"). Shortly after the merger, on July 19, 2004, Elantic voluntarily filed a petition for bankruptcy relief under Chapter 11 in the United States Bankruptcy Court for the Eastern District of Virginia in Richmond; a plan of reorganization ("the Plan") was confirmed April 28, 2005, and the bankruptcy proceeding was closed. Under the Plan, defendant Elantic Networks, Inc. ("ENI") was the successful bidder in the sale of all assets of Elantic, paying a purchase price that would result in a guaranteed distribution to general unsecured creditors of 62% of the allowed amount of their claims.[2]

---

[1] Elantic Telecom, Inc. ("Elantic") stresses that it was not a party to this suit, and that this suit did not specifically find that any trespass had occurred on the Trail.

[2] Elantic alleged in its Motion for More Definite Statement that ENI does not do business in Virginia and has not been served with the Summons or Complaint. The Park Authority in its Opposition agreed with this statement, but pointed out that the Removal petition apparently spoke for "all defendants." It is still unclear whether ENI has been served.

In 2004 and 2005, the Park Authority filed pre-petition and administrative expense claims against Elantic in the bankruptcy proceeding, seeking damages for its alleged trespass on the Trail.[3] Elantic filed objections to these claims, and Virginia Power intervened. As part of the Plan, the bankruptcy court retained jurisdiction over the Park Authority's claims along with three other matters, and they remain pending. In August 2006, Elantic filed a declaratory judgment adversary proceeding in the bankruptcy case against the Park Authority under the Telecommunications Act of 1996, 47 U.S.C. § 253, asking the court to declare that the Park Authority's demands for payment violate federal law by prohibiting Elantic's competitive ability to offer telecommunications in the Commonwealth. In late September 2006, the bankruptcy court, on motion of Elantic, consolidated this declaratory judgment action with the bankruptcy claims. The Park Authority has filed a motion to withdraw the reference, which is still pending.

On September 6, 2006, the Park Authority filed suit in the Circuit Court of Fairfax County against Elantic, ENI, and

---

[3] Specifically, on November 19, 2004, the Park Authority filed a general unsecured claim in the amount of $3,052,579.04 for damages for alleged trespass on the Trail before the petition date. On July 14, 2005, the Park Authority filed a claim requesting payment of administrative expenses in the amount of $501,449.85 for damages for alleged trespass on the Trail during the post-petition period of July 19, 2004 to May 9, 2005, the date the Plan became effective.

Virginia Power for trespass, and against Virginia Power alone for unjust enrichment and a constructive trust. All counts are based on the Park Authority's claim that Virginia Power has unlawfully continued to allow Elantic to use the fiber optic line on the Trail. The Park Authority seeks compensatory and punitive damages and injunctive relief, and specifies that the damages it seeks against Elantic and ENI are for alleged trespass subsequent to the effective date of the Plan.

On September 15, 2006, the defendants removed the lawsuit to this Court under 28 U.S.C. §§ 1334, 1367, and 1452 based on Elantic's bankruptcy proceeding.

**Analysis**

The Park Authority argues vigorously that this Court does not have subject matter jurisdiction over the instant civil action, which only involves questions of state law. Even if the Court did have jurisdiction, the Park Authority argues that it should remand this litigation to the state court for equitable reasons. The core of the parties' dispute focuses on whether this civil action is sufficiently "related to" Elantic's bankruptcy proceeding for this Court to exercise subject matter jurisdiction under § 1334(b).[4] In the Fourth Circuit, a civil proceeding is

[4] 28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

"related to" a bankruptcy case where the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts the handling and administration of the bankruptcy estate. New Horizon of NY LLC v. Jacobs, 231 F.3d 143, 150-51 (4th Cir. 2000) cert. denied, 532 U.S. 1052 (2001). See also Owens-Illinois, Inc. v. Rapid American Corporation (In re Celotex Corp.), 124 F.3d 619 (4th Cir. 1997) (noting the Fourth Circuit's adoption of the test for "related to" jurisdiction set forth in Pacor, Inc. v. Higgins, 734 F.2d 984, 994 (3d Cir. 1984)).

The Park Authority argues that this complaint is not "related to" the bankruptcy proceeding for several reasons, foremost of which is that the bankruptcy proceeding is closed. It also points out that it seeks damages here against Elantic only for its post-confirmation trespass, and asserts that because under the Plan ENI will pay the debts of Elantic, neither the debtor (Elantic) nor the administration of the bankruptcy estate will be affected by this case.

Elantic responds that the bankruptcy court has retained jurisdiction over the Park Authority's proofs of claim for damages related to the alleged trespass. It points out that although the Park Authority's claim against Elantic in the civil action before this Court seeks only post-confirmation damages, its claims against Virginia Power seek damages dating back to

Virginia Power's first alleged trespass, in 1998, under a theory of joint and several liability. Under that theory, any recovery from Virginia Power in this action will have the effect of reducing the Park Authority's claims pending against Elantic in the bankruptcy court. Elantic asserts that this potential reduction in claims in the bankruptcy court provides "related to" jurisdiction under the Fourth Circuit's holding in Celotex, in which it affirmed the district court's denial of a remand and found that a state action for contribution fell within the district court's "related to" jurisdiction. In re Celotex, 124 F.3d at 626 (noting that any recovery in a state action for contribution would reduce the claim against the bankruptcy estate for contribution by the same amount, thus altering the liabilities of the debtor's bankruptcy estate).

Elantic's reliance on Celotex is misplaced for several reasons. First, after noting that the state court action for contribution would reduce the claim against the bankruptcy estate, the Fourth Circuit found that "furthermore, any recovery ... would impact the handling and administration of the Celotex bankruptcy estate by changing the character of [the] indemnification claim against Celotex from contingent and unliquidated to certain and liquidated." Id. The Celotex court, then, implied that the state case was "related to" the bankruptcy proceeding because it met a two-part test: it would alter the

liabilities of the estate and affect the administration of the estate by changing the character of the claim. In contrast to the claim in Celotex, the Park Authority's claims are not contingent and unliquidated but instead are specified and certain, and Elantic has not argued that the instant action would change the character of the Park Authority's claims.

Furthermore, in Celotex the state contribution action was based on a contractual provision providing for contribution and indemnification. In contrast, this case involves the potential effect of a state court judgment that is far more attenuated because the defendants are alleged to be joint tortfeasors in the state action.

Finally, the posture of the bankruptcy proceeding in Celotex was quite different from that in this case. In Celotex, the litigation of the state action overlapped with the bankruptcy proceeding, with the reorganization plan confirmed after briefing but before oral argument on the matter of the district court's subject matter jurisdiction. The Fourth Circuit specifically noted that its analysis centered on whether "related to" jurisdiction existed at the time of removal, which was before the plan was confirmed and the bankruptcy case was closed, and asserted that "[its] analysis may not be informed by [its] knowledge of the Confirmed Plan...." Id.

As the Park Authority argues, unlike in Celotex, in this

case the Plan was confirmed a year and a half before the instant action was filed in state court. The Plan contains provisions for the pro rata payment of the claims filed by the Park Authority in the bankruptcy action, and defendant ENI, the parent company of Elantic, has "agreed to contribute any and all amounts necessary to make payments under the Plan, including a sixty-two percent guaranteed distribution for Allowed Claims of General Unsecured Creditors." In re: Elantic Telecom, Inc., United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, Chapter 11, Case No. 04-36897-DOT, Order ¶ 10. Elantic admits that although it is contractually obligated under the Plan to make payments to holders of Allowed Claims, "its parent" is "required by the plan" to make "certain equity infusions." Opposition of Removing Defendants to Northern Virginia Regional Park Authority's Motion to Remand, 24. The Plan clearly provides that these "equity infusions" are designed to satisfy all liabilities of Elantic.

Because the Plan has been confirmed and the claims of the Park Authority in that proceeding have been carefully and specifically accounted for, including the exact share of distribution that will be awarded, if any, the instant action will not alter the liabilities of the bankruptcy estate or have a sufficient effect on the administration of the bankruptcy estate to supply "related to" jurisdiction under § 1334(b). Any

relationship between the instant action and the bankruptcy proceeding is remote at best. This tenuous relationship to the bankruptcy proceeding is insufficient to establish subject matter jurisdiction in this Court.

Elantic also argues that there is "related to" jurisdiction because the bankruptcy court and this Court would use the same legal standards and facts to determine whether there has been a trespass and, if so, the amount of trespass damages. Elantic argues that should the Court remand this civil action to state court, the findings of that court will apply to the bankruptcy litigation through issue preclusion and collateral estoppel. Elantic does not cite any Fourth Circuit precedent for the assertion that this possibility provides the requisite basis for "related to" jurisdiction. Moreover, Elantic admits that the bankruptcy proceeding will probably conclude before the instant action reaches judgment in the state court. Based on these facts, the Court finds this argument insufficient to support subject matter jurisdiction.

Elantic's weakest argument is that the Court has federal question jurisdiction over the complaint because federal question jurisdiction extends over "those cases in which a well-pleaded complaint establishes that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Christianson et al. v. Colt, 486 U.S. 800, 808

(1988). Specifically, Elantic argues that under § 253 of the Telecommunications Act, the Park Authority cannot "prohibit or have the effect of prohibiting any ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a). Elantic has raised this issue as an affirmative defense of preemption in its Answer filed in the removed case, but did not premise its removal action on federal question jurisdiction. At oral argument the Park Authority pointed out that the provision relied on by Elantic is not designed to shield telecommunications companies against trespass claims and has never been used the way Elantic proposes to use it. The § 253 argument is an affirmative defense, the resolution of which is not necessary for the resolution of the Park Authority's state law claims under the standard recited in Franchise Tax Board of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). Accordingly, federal question jurisdiction is not conferred on this Court by Elantic's invoking § 253 in its defenses to the complaint.

Elantic's last argument is that the Court should exercise its supplemental jurisdiction under 28 U.S.C. § 1367 because the Court has original jurisdiction over the bankruptcy action and the supplemental or related claim arises out of a "common nucleus of operative fact" with the federal claim such that the plaintiff would ordinarily be expected to try the claims in one proceeding.

Moreover, Elantic argues, the case does not satisfy any of the conditions in 28 U.S.C. § 1367(c), which provides circumstances in which a federal court can decline to exercise supplemental jurisdiction.

Elantic has cited no authority in the Fourth Circuit to support the proposition that § 1367 provides the requisite jurisdiction over matters related to a bankruptcy proceeding. Indeed, § 1334(b) would be entirely superfluous if this were the case. Nor has Elantic been able to offer any case law to support its argument that an action that does not meet the standard for "related to" jurisdiction under § 1334 may nevertheless be removed to a federal court under the supplemental jurisdiction provision in § 1367.

To the contrary, the Fourth Circuit has held that "'the mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate does not bring the matter within the scope of § 1334(b).'" New Horizon, 231 F.3d at 151, quoting Pacor, 743 F.2d at 994. As the Fourth Circuit has recognized, cases satisfying the "arising from a common nucleus of operative fact" requirement of § 1367 are not necessarily sufficiently related to confer jurisdiction on the federal court. Based on this analysis, the Court declines to exercise supplemental jurisdiction in this matter under § 1367, finding that such application of § 1367 would be inappropriate.

Finally, the Park Authority argues that even if this Court has subject matter jurisdiction, it can and should exercise its discretion to remand the case to state court based on equitable considerations under 28 U.S.C. § 1452(b).[5] The Park Authority cites several equitable considerations identified by district courts in this circuit and elsewhere, including cases where the courts have asserted the factors under § 1452(b) to be similar to those used by courts in considering whether permissive abstention is appropriate under 28 U.S.C. § 1334(c)(1).[6]

Among those considerations are (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy estate; (6) the existence of the right to a jury trial; and (7) prejudice to the party involuntarily removed from state court. Elantic cites these same factors and adds an eighth, the effect of a remand on judicial administration. The parties

[5] Section 1452(b) provides: "The court to which such a claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

[6] Section 1334(c)(1) provides: "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

disagree as to the application of these factors.

An evaluation of these factors leads the Court to conclude that even if it had subject matter jurisdiction over this civil action, a remand for equitable reasons would be appropriate. Given the Virginia Supreme Court's previous decision determining the parties' rights on the Trail, comity and issues of state law weigh heavily in favor of remand. As discussed above, the administration of the bankruptcy estate will not be affected by a remand, and the issues raised in this litigation are only remotely related to the proofs of claim pending in the bankruptcy court. Moreover, the Park Authority, a local entity, has already litigated its relevant property rights in the same state court in which it now seeks to have damages assessed against the alleged trespassers on that property. The Park Authority's damages claims against Virginia Power are much greater than the one claim against Elantic, and it would be prejudiced by being forced to litigate the entirety of its claims in Elantic's bankruptcy proceeding in Richmond rather than in a local Northern Virginia state court.

**Conclusion**

For all the above stated reasons, the Court finds that it does not have subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1334, and will therefore grant the Motion to Remand. Even if the Court had jurisdiction, remand would be

appropriate for equitable considerations under 28 U.S.C. § 1452(b). This decision renders moot Elantic's Motion to Transfer, which will be denied. An appropriate order will issue with this opinion.

Entered this 22nd day of November, 2006.

/s/
Leonie M. Brinkema
United States District Judge

Alexandria, Virginia